## Joseph Patterson, for the use of Dunning M'Nair *against* James Sample, sheriff, and Andrew Robertson, special bail of Edward Jackson.

Recognizances of bail do not bind lands from their caption, but from the judgments on *scire facias* brought.

The court will not direct the appropriation of money arising on sheriff's sales, in a summary way, when the facts are controverted, unless the party has no other remedy.

APPEAL from the decision of SMITH, J. on a case stated, at a Circuit Court, held in Allegheny county, in November 1802, as follows :

In this suit, a *venditioni exponas* issued in the Circuit Court, returnable to March term 1802, to sell lands of James Sample, viz. No. 3, 8, 16 and 19, in the 4th district of depreciation lands, commonly called Cunningham's district. The sheriff returned, that he had sold the lands, and had the money ready in court, to pay as may be ordered. The facts were these :

On the 4th November 1795, the defendant, James Sample, mortgaged the lots now levied on and sold, viz. Nos. 3, 8, 16 and 19, to James Burd, but the mortgage was not recorded until 13th March 1801. On the 20th September 1798, in the Court of Common Pleas, in and for the county of Allegheny, in which county the lands lie, James Sample aforesaid, became special bail for Edward Jackson, at the suit of the plaintiff. Jackson afterwards removed this action to the Supreme Court, by *habeas corpus ;* and on the 2d May 1799, the said Sample and Robertson entered bail above in the same action. In November 1800, judgment was entered against Jackson, and a *ca. sa.* issued to December term 1800, against him. A *scire facias* issued against the special bail, on the 28th February 1801, returnable to the third Monday in March 1801, and judgment was entered thereon on the 14th November 1801.

[Patterson *v.* Sample et al.]

The question was, shall the mortgagee be satisfied out of the sales of this land?

James Burd, the mortgagee, by Steel Sample, his attorney, prayed the court to order full satisfaction of the mortgage aforesaid, out of the monies received by the sheriff from the sale of the mortgaged premises, which was opposed by the plaintiff in this action.

On argument, SMITH, J. declared his opinion in the Circuit *Court, that by the neglect of the mortgagee, the judgment creditor was entitled to the monies arising from the [*309 sale, but desired that the point should be reserved for the opinion of the court in Bank.

The appeal was entered accordingly in Bank, but the counsel for the plaintiff, objected to the regularity thereof, for want of the certificate of counsel, agreeably to the Circuit Court act 4 St. Laws 362.

The following supplement was agreed to be added to the case stated; and with this addition, the appeal was to be considered as having been regularly made to the Supreme Court.

The original writ in the action above stated, was directed to the said James Sample, then sheriff of Allegheny county, in which county the lands sold are situate. Sample, the sheriff, arrested Jackson the defendant, and committed him to gaol. The gaoler suffered him to escape, the said Andrew Robertson being then goaler, and the said Sample, being the sheriff.

Sample became special bail in the court below, on the 20th September 1798, and after the removal of the cause by *habeas corpus* on behalf of the defendant, Sample and Robertson became bail above on the 2d May 1799, this last entering of bail being after Sample's office of sheriff expired. On the 31st October 1800, judgment was entered against Jackson, and process issued thereupon, *prout* records of Circuit Court.

The appeal was now argued by Messrs. Addison and Sample, for the mortgagee, and by Mr. Ross, for the judgment creditor in the action.

For the mortgagee, three points were made. 1. That a recognizance of bail binds lands, only from the judgment on the *scire facias*. 2. A judgment creditor is neither a purchaser, nor to be considered in the light of a mortgagee. 3. An unrecorded mortgage is good and valid against the mortgagor, and all others claiming under him, except subsequent purchasers and mortgagees.

1. The case of Campbell *v.* Richardson, 1 Dall. 131, which was determined on full argument, by Mr. President SHIPPEN, in the Common Pleas, establishes, that recognizances of bail only bind lands from the judgments obtained on the *scire facias*.

The grounds of that resolution are fully reported, and are unnecessary to be detailed at length. But the general opinion of conveyancers and lawyers for a long course of years, our act to prevent frauds and perjuries made in 1772, copying minutely the

[Patterson *v.* Sample et al.]

English statute of 29 Car. 2, c. 3, as to judgments binding lands, and omitting the clause respecting recognizances, and the relative dignity of judgment debts and of those upon recognizance, *as to deceased persons, being settled by law, must be admitted to be powerful arguments in favour of that decision. The late act of assembly, passed 19th April 1794, § 14, also gives a preference to judgments, over recognizances, when it prescribes the manner and order of paying the debts of deceased persons. 3 St. Laws, 527.

Great inconvenience would arise from locking up property from alienation in a commercial and agricultural state. Recognizances of bail are usually taken in double the sum demanded. When they are taken, it is uncertain whether the lands of the principal may ever be affected thereby. Nothing may be recovered in the suit against the principal, or he may be surrendered by his bail. A small sum may be recovered, though the bail may be very high ; and the extent of the recognizance's binding force can never be ascertained at the time of caption. If the plaintiff's doctrine be correct, no prudent man would become special bail for another ; and if he even chose to run the hazard, no man under his alienation would be secure in his purchase. The common law of England only binds here, when it is applicable to our local situation.

2. If a creditor by judgment buys in the first mortgage, he shall not tack this to his judgment as a third mortgagee may. He did not lend his money on the credit of the land, and has no present right therein : he cannot be called a purchaser. 2 Wms. 491.

The same principle is establised in 2 Vern. 564. A judgment is only a general security ; not a specific lien upon land. A *bona fide* purchaser under an agreement shall not be postponed to a judgment creditor. 1 Wms. 277. In Roger's lessee *v.* Gibson and Lea, tried in Fayette county, in October 1804, it was determined by YEATES and SMITH, Justices, upon argument, that a judgment creditor was not a purchaser or mortgagee under the act of assembly of 18th March 1775. 1 Dall. St. Laws 703.

3. Under the old act for acknowledging and recording of deeds, passed in 1715, no deed or mortgage, or defeasible deed in the nature of mortgages, thereafter to be made, shall be good or sufficient to convey or pass any freehold, or inheritance, or to grant any estate for life or years, unless such deed be acknowledged, or proved and recorded within six months after the date thereof, in the county where such lands lie. Ib. 112. But in the noted case of Levinz *v.* Will, 1 Dall. 430, it was solemnly determined, that a mortgage, though unrecorded within six months, would be valid against the mortgagor, and all other persons, except a subsequent grantee or mortgagee, whose deed or mortgage was regularly recorded. Ib. 435. By the act *of 1775, an unrecorded mortgage binds from its date, if recorded before a subsequent mortgage. In the principal case,

[Patterson *v.* Sample et al.]

the mortgage to Burd was recorded on the 13th March 1801, and the judgment on the *scire facias* was not obtained until 14th November following.

All statutes made *in pari materia*, shall be considered together as one act. The act of 1775, explains the act of 1715 ; and as far as it goes, alters and repeals it. *Expressio unius est exclusio alterius.* The object of the legislature is declared in the preamble of the act of 1775, that it was meant to guard " against prior and secret conveyances and fraudulent incum- " brances."

The plaintiff in the suit is presumed to know the law, that a recognizance of bail does not bind lands from the caption, and therefore cannot be injured. In addition thereto, the purchaser knew of the mortgage being recorded before judgment was had on the *scire facias.* And it is of no moment to him, how the purchase money is applied. He that has notice, has no equity at all. Gilb. Rep. 15. Notice of a judgment, though not docquetted, will bind a purchaser, notwithstanding the express words of the statute of 4 and 5 Wil. and Mary, c. 20, § 3, by which it is declared, that judgments not docquetted, shall not affect lands, as to purchasers or mortgagees. 3 Equ. Abr. 684. So one having a second mortgage registered, having notice of a first unregistered deed, shall not set it aside, though the statute of 7 Ann. c. 23, gives preference to the deed first registered. Cowp. 712. 2 Atky. 275. 1 Burr. 474. A purchaser with notice, must ever stand in the place of the original party.

Arguments for the plaintiff in the action.

This is a case wherein a sheriff liable by the default of his gaoler, became special bail. The plaintiff's debt was large, and not one third part of it is recovered. Now it is attempted to diminish it 500l. more, and thus eventually lose it. The practice would lead to collusion between the bail, who was the mortgagor, and the mortgagee. It is the interest of both, to strip the creditor of his debt.

At common law a recognizance bound lands from the time it was entered into. It was acknowledged before a judge or other officer, having authority for that purpose, and enrolled in a court of record. 2 Bac. 687. Old edit. 330. When entered, a recognizance took effect from its first acknowledgment, and bound persons and lands from that time. Hob. 195, 196. In Baskerville *v.* Brocket, Cro. Jac. 449, it was argued, whether if execution be sued out against the lands of the bail, it should bind the lands, which he had at the time of the recognizance made, though they were aliened afterwards. It does not appear by *that book, that the point was determined. It is true in [*312 the abridgment of that case in 3 Danv. 317, it is said to have been adjudged, that the lands were not liable ; but in Poph. 132, it appears, 'that MONTAGUE, C. J. and CROKE, J. were of opinion, that the lands leased were bound by the recognizance ;

though HOUGHTON, J. thought differently. And this report of the case has been adopted by Lord Chief Baron COMYNS, in the 1st vol. of his digest, (old edit.) 502, (new edit. 708.) See Gilb. Excheq. 83.

The 18th section of the stat. of 29 Car. 2, c. 3, (3 Ruff. Stat. 386,) declares, that recognizances shall bind lands in the hands of any purchaser, *bona fide,* and for valuable consideration, but from the time of inrolment. But this provision arose from the practice of the courts.

By an act passed 23d September 1783, 2 St. Laws, 147, mortgages unrecorded between 1st January 1776 and 18th June 1778, which should be recorded within six months, were declared to be valid, except against any subsequent judgment, statute, recognizance, &c. which clearly shows the sense of the legislature as to the binding force of recognizances. The act of 5th March 1790, declares, that recognizances given by sheriffs and coroners, when filed in the office of the prothonotary of the Supreme Court, shall be in nature and effect of judgments, obtained in the Supreme Court, and shall bind their lands. 2 St. Laws, 771. And the 14th section of the act of 6th March 1778, (1 St. Laws 759,) is made on the ground of a recognizance, affecting lands, like a judgment or extent; and they are classed together. But a previous act had passed on the 28th January 1777, which declared the common law to be in force here. 1 St. Laws, 723.

It is not contended, that courts can legislate or mould their adjudications, so as to guard against inconveniences. But if recognizances do not bind from their caption, what will become of those taken in criminal cases, or in the Orphans' Court? The parties and their sureties may sell their land, and remove out of the state. This would be a serious mischief, in the administration of justice.

As to Campbell *v.* Richardson, it is the authority of an inferior jurisdiction; and notwithstanding what is said there about the debts of living and deceased persons, it is certain, that the same priority does not exist in payment of the debts of the former, as of the latter.

It must be confessed, that in Levinz *v.* Will, the doctrine was novel, and seems to contravene the plain words of the act of 1715, which avoids all mortgages unrecorded in six months. Many things are said in it, which are beside the point before the court, and are therefore extrajudicial.

As to Rogers's lessee *v.* Gibson and Lea, it was not the case *of a mortgage, but an absolute deed. The possession *313] of Lea there was material, and would put a creditor on enquiry. The determination was under the act of 1775, and not of 1715; and the two laws must not be confounded. Mortgages unrecorded take no effect. But it is otherwise as to deeds, under the law of 1715.

A recognizance enrolled, after the time for enrolling it was

[Patterson *v.* Sample et al.]

elapsed, has been postponed to a judgment obtained before the enrolment, that the creditor might not complain of wrong done him by the order for enrolling the recognizance.   2 Vern. 234.

It is a rule, that whenever equity permits a recognizance to be enrolled, after the time is out, it will not be suffered to affect an intervening purchaser.   1 Wms. 340.   S. C. 2 Vern. 750.   Whoever conceals his incumbrance shall be postponed.   2 Vern. 370.

A recognizance of bail becomes of no force by entry of the judgment against the principal; but when a *ca. sa.* is taken out, it is notice to the bail; and if the principal dies after a *ca. sa.* returned *non est inventus,* the bail is fixed.   Stra. 511, 717.   It is sufficient for the plaintiff's purpose here, if the lands of the bail are bound on the return of the *ca. sa.* or even at the time of issuing the *scire facias.*   A surrender of the principal on the *scire facias,* is *ex speciali gratia,* and cannot be pleaded.   1 Lord Raym. 156.   On the surrender, the costs on the *scire facias* must be paid.   The judgment on the *scire facias,* is only an award of execution, for the debt recovered against the principal.   Lilly's Ent. 380.

The plea to a *scire facias* is *nul tiel record,* which implies that the recognizance is a debt of record.   On the *ca. sa.* being returned N. E. I., the sum recovered becomes an absolute debt on record.   It sounds strangely to assert, that the lands of the bail are not bound, until the award of execution against them, when the judgment against them neither augments nor decreases the debt of record.

Our laws uniformly speak of recognizances binding lands; and as we have no statutes merchant or staple here, they can only refer to recognizances of bail.   Both before and since the revolution, they have been considered as having preference to debts due by deceased persons.

But a previous question will occur.   Have the court the power to interfere between the contending parties in this summary mode?   The purchaser had taken possession of the land, and runs the risque of this concealed mortgage.   Notice was not given thereof at the time of sale.   The application now is adverse to the purchaser, and is grounded on the equitable discretionary powers of the court.

The plaintiff also has strong equity.   His attorney, if he had *known of the mortgage, would not have accepted Sample as special bail.   The negligence of a mortgagee will postpone him both at law and in equity.   1 Term Rep. 762.   Even notice to a purchaser cannot make that good, which is void in itself.   5 Co. 60.   A mortgagee not receiving title deeds, will be postponed on account of the false credit which he gives to the party.   1 Wms. 394–5.   Here the security of Burd is gone at law, and he will be held to strict terms, before he will be permitted to injure third persons.   The court will not interpose for such purpose.   He asks in effect, that the sheriff should be absolved from his responsibility, for his misconduct in office.   He

[*314

[Patterson *v.* Sample et al.]

was liable for the whole debt for suffering an escape on mesne process. If he had sold these lands *bona fide* and without notice, the purchaser would have held them exempted from the mortgage, if he put his deed first upon record. Why should not a sale by the sheriff produce the same effect, on pure principles of equity? Under the supplementary case, the matter is viewed as if the mortgagee had sued out his *scire facias;* but the authority of the court to interfere in the present mode is wholly denied. If lands are sold on a *puisne* judgment, the court cannot direct the monies arising thereupon to be applied to the payment of the elder judgments. It is incumbent on the purchaser to look to the records, and he buys at his own risque, subject to the elder judgments. Under the sheriff's sale, the purchaser only becomes vested with the interest and right, which the debtor had at the time of the judgment rendered against him, on which the sale is founded. No.inconvenience can arise on the score of recognizances ; they are not incumbrances of a dormant nature ; they are accessible to in every instance in Pennsylvania.

The counsel of the mortgagee in reply.

Why was this case stated, if it was not intended that the court should decide on it? Why was Judge SMITH called on to determine the legal question in the Circuit Court, and then reserve it for the opinion of the court in bank? Why was the supplementary case filed, if no resolution was meant to be had upon it? The truth is, that all the courts of justice are in the habit of directing the appropriation ·of monies arising on sheriff's sales, where the money is brought into court for that purpose. The court are guardians of the contending parties, of the sheriff, and all persons having legal incumbrances, as well as of the purchaser. The act of the court can do no injury. The sheriff, as appears by the case first stated, has returned that he has the money ready in court to pay as may be ordered, and the plaintiff, the mortgagee and purchaser, appear in court by their counsel, and are fully heard. All the material facts have been stated fully, *on which the court below proceeded, and have been restated, at the desire of the plaintiff.

A few of the observations will be replied to. The act of 28th January 1777, only declared, that the common law and such of the statute laws of England, as have theretofore been in force in the province, shall be extended. It is well known, that every part of the common law has not been adopted in this state.

The act of 10th June 1778, does not define the time when recognizances bind lands. It is agreed they have a binding force ; but whether they have their operation immediately on their caption, or afterwards upon the judgment on the *scire facias*, is a point on which we disagree.

The same remark applies to the acts of 6th March 1778, and of 23d September 1783. These laws were severally of a temporary nature, and preceded in point of time, the decision in Camp-

[Patterson *v.* Sample et al.]

bell *v.* Richardson, which took place in June term 1785. No inference favourable to the plaintiff's cause can be deduced from the act of 5th March 1790, but the reverse. If the recognizances of sheriffs and coroners bound their lands *ipso facto*, from the times of being entered into, it was idle and superfluous in the legislature to declare, that they should have such operation, and be in nature and effect of judgments in the Supreme Court. The plea of *nul tiel* record to a *scire facias* upon a recognizance of bail, proves nothing. It certainly was a record when filed, but whether it bound the lands of the cognizor from the caption, or at a subsequent period, is a question widely different.

As to the plaintiff's pretended equity, he had, it is true, a right of action against the sheriff for the escape of Jackson, upon mesne process ; but if Jackson's circumstances were bad, little could be recovered from him. There is a most striking distinction between an escape on mesne and judicial process, in a suit against a sheriff. It cannot be pretended, that the situation of the plaintiff was deteriorated, by accepting Sample and Robertson as special bail, instead of bringing an action against the sheriff or gaoler. At the time of the escape, the sheriff's recognizance was taken in the sum of 2000l., and the property of the two defendants has been sold by the late sheriff of Allegheny county to the amount of 11,000 dollars. The simple question awaiting the decision of the court is, has the plaintiff in the suit, or the mortgagee, the first lien on the lands sold ?

Brackenridge, J. This court has not exercised the power of appropriating the money arising from sales made by sheriffs.

Tilghman, C. J. Such power has certainly been frequently used, which was confirmed by Yeates and Smith, Justices, who *on being appealed to, said, it was matter of constant practice in Bank.          [*316

Tilghman, C. J. It does not appear to me that the facts are sufficiently stated, to enable us to form an opinion on them. This forms an insuperable objection against exercising the summary powers of the court in a case of this nature. I think, however, the opinion of Mr. President Shippen, in Campbell *v.* Richardson, cannot now be shaken, as to the period when a recognizance binds the lands of the bail. We have never adopted the whole of the common law in this government. Husband and wife selling the lands of the *feme* without levying a fine. and the dower of a married woman being subjected to the payment of the debts of the deceased husband, form instances of this kind. The difficulty here is, whether equity would, under circumstances similar to the present, uphold this mortgage against the judgment-creditor, who is said to have been injured by the negligence of the mortgagee ? This is my great doubt.

Brackenridge, J. According to the usage of Pennsylvania,

[Patterson *v.* Sample et al.]

recognizances do not bind from their caption; and such was always my opinion.

In the case of ·the United States *v.* Nicholls, this court made an order, that this commonwealth should be preferred ; but the facts were there fully stated.   I cannot however see, that the court can make any order where a sale of lands has been made under a later judgment.   Such creditor cannot by his sale affect the earlier liens of prior judgment creditors, whose earlier demands must be first satisfied before such sale can be validated.

SMITH, J.   I think no sale under a later judgment can affect prior judgments, unless they are fully paid by the sale.

YEATES, J. was silent, from his connection with James Burd, who was his brother in law.   But his opinion did not go to the extent laid down by the two last mentioned judges.

*Curia advisare vult.*

On the next day TILGHMAN, C. J. delivered the opinion of himself and BRACKENRIDGE, J.

In this case, the plaintiff having obtained judgment against the defendant, levied on his land, and had it sold by execution. The money being in the hands of the sheriff, a motion was made to the Circuit Court of Allegheny county, that the balance due on a mortgage executed by the defendant to James Burd, dated ·4th November 1795, which was not recorded till 13th March 1801, should be paid to him.

*317]   *Neither the sheriff nor purchaser have made any application to the court, nor does the plaintiff consent to the decision of the dispute between him and the mortgagee in this summary way.

It appears too, by the argument which has taken place, that the parties are at variance with respect to several facts, which might materially influence the court in their decision.   If there was no other mode for the mortgagee to obtain redress, we might be induced to proceed to a decision, having first directed the controverted facts to be ascertained by a jury.   But as the mortgagee has a plain and simple remedy by proceeding in the usual way on the mortgage, we think it most proper to leave him to that remedy, without making any order for payment of the money, and without intimating any opinion as to the merits of the dispute.

Explained in 2 Rawle 66 where it was said that the only ground upon which SMITH, J. seems to have placed the case was, the recording of the mortgage deed within six months.

Referred to in 35 Pa. 134 as illustrating the cautiousness of the Supreme Court in declaring when prior judgments, mortgages and other liens were discharged and when not.